CORA IMOGENE FARLEIGH, Appellant and Respondent, v. ALFRED J. CADMAN, Individually and as Executor of WILLIAM H. CADMAN, Deceased, Respondent and Appellant, Impleaded, etc.

1. GIFT — SAVINGS BANK DEPOSIT IN TRUST — FINDING OF FACT. A gift, whether in the form of a trust, or otherwise, always involves the intention of the donor; and when the trial court has found that there was a gift which took the form of a deposit in a savings bank in trust for the donee, and the Appellate Division has unanimously decided that the findings of fact are supported by the evidence, the finding cannot be questioned in the Court of Appeals.

2. ADDITIONS TO TRUST ACCOUNT IMPRESSED WITH ORIGINAL GIFT. Where there is a conclusive finding that an original deposit in a savings bank, intended as a gift, was in the name of the depositor as trustee for the donee, subsequent deposits made to the credit of the same account must be deemed, prima facie, to have been made for the same purpose as the original deposit by which the trust was created, and cannot be detached therefrom, in the absence of a finding that they were intended for some other purpose or that they were not made for the original beneficiary's benefit.

3. ORIGINAL BENEFICIARY ENTITLED TO TRUST ACCOUNT, INCLUDING ADDITIONS AND INTEREST, AT DATE OF CLOSING OF ACCOUNT BY TRUSTEE. Where the creation of an irrevocable trust, by the opening of a savings bank account in the name of the depositor as trustee for the beneficiary, constituting a valid gift, is established by conclusive findings, and it is also found that the account was closed by the trustee and the fund transferred to the name of another as beneficiary, without the consent of the original beneficiary, and so retained until the trustee's death, the original beneficiary is entitled, as matter of law, not only to the original deposit

22

but also to additional deposits and accumulated interest included in the original account at the date of its closing and transfer, in the absence of a finding that the act of the trustee in increasing the account was with a different intention from that which accompanied the original deposit, although it is found that the trustee exercised control over all the deposits up to the time of his death.

4. APPEAL — SCOPE OF JUDGMENT. The provision, that the Court of Appeals may "grant to either party such judgment as such party may be entitled to" (Code Civ. Pro. § 1337), means such judgment as a party may be entitled to upon the facts found.

*Farleigh* v. *Cadman,* 11 App. Div. 628, modified.

(Argued April 25, 1899; decided May 12, 1899.)

CROSS-APPEALS from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered December 16, 1896, affirming a judgment entered upon a decision of the court on trial at Special Term, and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*G. G. Reynolds* for plaintiff. The deposit of the money in the bank in the name of Wm. J. Cadman, in trust, for plaintiff was a valid and sufficient declaration of trust, and passed the title to the deposits, Cadman constituting himself a trustee. His retention of the pass book must be deemed to have been as trustee, and was not inconsistent with the completeness of the gift. (*Martin* v. *Funk,* 75 N. Y. 134; *Willis* v. *Smyth,* 91 N. Y. 297; *Mabie* v. *Bailey,* 95 N. Y. 206; *Fowler* v. *B. S. Bank,* 113 N. Y. 450; *Schluter* v. *B. S. Bank,* 117 N. Y. 125.) The subsequent deposits, made by W. J. Cadman himself in the same name, were intended, when made, to come under the same trust. (*Martin* v. *Funk,* 75 N. Y. 137; 117 N. Y. 125.)

*R. D. Benedict* for defendant. The complaint should have been dismissed. (*Martin* v. *Funk,* 75 N. Y. 134; *Willis* v. *Smyth,* 91 N. Y. 297; *Mabie* v. *Bailey,* 95 N. Y 206; *Beaver* v. *Beaver,* 117 N. Y. 421; *Cunningham* v. *Davenport,* 147 N. Y. 43.)

O'BRIEN, J.   The plaintiff brought this action to recover certain moneys that came to the hands of the defendant and which were claimed by the plaintiff as a trust fund created for her benefit.   The facts are undisputed, and the controversy from the beginning involved questions of law only.

When the plaintiff was a child, three or four weeks old, she was taken into the family of the defendant's father, William J. Cadman.   Although never legally adopted she was treated by him and his wife as their own child, and was cared for and educated in the same manner.   The plaintiff supposed that they were her real parents until after she had grown to years of maturity, and when about twenty-two years of age she married without the consent of Mr. Cadman.   Until this event the plaintiff and the defendant were considered and treated as the two children of the household, since there were no others to provide for.   Prior to the 20th of April, 1878, Mrs. Cadman had some money in her own right, and at least a portion of it was on deposit in a savings bank to her credit.   She and her husband arranged to set apart this money, or a portion of it, for the benefit of the plaintiff, and in pursuance of the arrangement the wife delivered her bank pass book to the husband with the necessary order to enable him to draw the money, to the end that it might be deposited for the plaintiff's benefit in the same savings bank.

On the date last mentioned the husband took this pass book and the order to the South Brooklyn Savings Institution and there opened an account in his own name, "in trust for Cora I. Cadman," the plaintiff, that being the name she bore at all times prior to her marriage.   The amount placed to the credit of this account on that day was $778, all of which was transferred from the account of Mrs. Cadman in the bank, and which was represented by the pass book and order which she had delivered to her husband.

The plaintiff, then about twelve years of age, had been informed of this arrangement for her benefit and was present at the bank with her father, as she then supposed him to be, when the account was opened, so that she may be regarded,

at least in some sense, as a party to the transaction. It is clear from the record that the purpose of this transaction was to make a provision for the plaintiff's benefit, and it took this form after consultation in the family, and with the officers of the bank.

It cannot be doubted that a valid and irrevocable trust was thereby created for the plaintiff's benefit, within all the authorities on that subject. (*Martin* v. *Funk*, 75 N. Y. 134; *Willis* v. *Smyth*, 91 N. Y. 297; *Mabie* v. *Bailey*, 95 N. Y. 206; *Beaver* v. *Beaver*, 117 N. Y. 421; *Cunningham* v. *Davenport*, 147 N. Y. 43; *Fowler* v. *Bowery Savings Bank*, 113 N. Y. 450; *Schluter* v. *Bowery Savings Bank*, 117 N. Y. 125.) In substance and legal effect that was the finding of the learned trial court which has been affirmed at the Appellate Division, and so far we are concluded by the decision.

But Cadman, the trustee, subsequently made various other deposits to the credit of this account, and drew out sums aggregating something over $200, which was used for the plaintiff's benefit. On the 7th day of January, 1889, about the time of the plaintiff's marriage, which the trustee did not approve, he drew out the whole sum standing to the credit of the trust account, which appears to have been $2,774.16, with perhaps some accumulated interest to be added, closed the account and opened a new account in his own name in trust for his son, the defendant, Alfred J. Cadman. He continued to make deposits to the credit of this new account, in small sums, and to draw out small sums up to the time of his death, on the 19th of September, 1892. The defendant was appointed the executor of his father's will, and on the 27th of September, 1892, he drew out all the money standing to the credit of his father in the new trust account and deposited it in the same bank in a new account in his individual name. In this way the defendant became possessed of the whole fund.

Both parties have appealed from the judgment. The defendant, because the plaintiff was permitted to recover the amount of the original deposit of $778, and interest, and the

plaintiff because she was not permitted to recover the sums subsequently deposited to the credit of the trust account prior to the time it was closed by the trustee, on the 7th of January, 1889, and the proceeds transferred to the new account in trust for the defendant. The order of the court below, made upon the appeal from the order of the trial court, states that it was unanimously decided that all the findings of fact are supported by evidence.

This must dispose of the defendant's appeal, since it rests entirely upon the proposition that no valid trust was created by the transaction in favor of the plaintiff. A gift, whether in the form of a trust, or otherwise, always involves the intention of the donor, and the courts below having found unanimously that there was a gift to the plaintiff which took the form of a deposit in a savings bank in trust for her, the finding cannot be questioned here. It follows that the defendant's appeal cannot be sustained. There is nothing in the case of *Cunningham* v. *Davenport* (*supra*) that conflicts in any respect with this conclusion. In that case it was held that the proof did not establish an intention on the part of the alleged donor to establish a trust for the benefit of the alleged beneficiary. But all the facts that were necessary to establish the trust which were absent in that case are notably present in this; and, moreover, the provision of the Constitution and the statute which forbids this court to review the decision of the court below, when it is unanimously held that the findings of fact are supported by evidence, did not apply to that case as it does to this.

We think that the findings of the trial court, unanimously affirmed on appeal, entitled the plaintiff to a judgment for the whole amount of the trust account as it stood before the change made by the trustee on the 7th day of January, 1889. The finding is that the original deposit was in the name of Cadman, as trustee for the plaintiff. The addition to the fund made by the trustee was impressed with the same character as the original deposit, and thus the whole amount so deposited, while the account stood in the original form, represented a

credit in the bank to the trustee for the benefit of the plaintiff, and in trust for her. The subsequent deposits made to the credit of this account cannot be detached or separated from the original deposit by means of which the trust was created, in the absence of a finding that they were intended for some other purpose, or that they were not made for the plaintiff's benefit. These deposits were *prima facie*, at least, made for the same purpose as the first one, and hence in every case were additions to the original gift.

The learned trial court found that the trustee exercised control over these deposits up to the time of his death. This finding is entirely consistent with the existence of a trust as to the whole fund and does not in the least detract from the plaintiff's claim that she was the beneficiary of all the money deposited in trust for her by her trustee. Her right to the subsequent deposits rests upon the same ground as her right to the first one. The purpose and intention attending the original transaction followed all the subsequent acts of the trustee in adding to the trust fund, and impressed the whole with the same character as a gift to this plaintiff or for her benefit in the form of a trust of personal property.

The control which the trustee exercised over the later deposits was not different from that which he exercised over the first one, since he drew the whole out at the same time and attempted to create a new trust with the proceeds of the first one for the benefit of the defendant. But the right of the plaintiff having attached to the whole sum when, and as fast as it was deposited, the trustee could not affect these rights without her consent. The trustee could not destroy a trust once established by attempting to divert the fund from the beneficiary to other purposes, and that is what he undertook to do when he changed the form of the original transaction and substituted another beneficiary in the place of the plaintiff.

The fact that the trustee controlled the fund, or the additions made to it, was only in the line of his duty and had no more effect to change the character of the subsequent deposits

than it had to deprive the plaintiff of the benefit of the original one. It is impossible to differentiate the last sum deposited to the credit of the trust account by the trustee from the first one. They must all be held to have been made for the same purpose and consequently impressed with the same trust for the benefit of the plaintiff. Since there was no proof, and no finding by the trial court, that the act of the trustee in increasing the amount to the credit of the trust account from time to time was with any different intention from that which accompanied the original deposit, the law cannot separate the several transactions and give one character to the first deposit and another character to those made afterwards. All this court has the power to do is to take the findings of fact as they are and draw from them the proper legal conclusion.

The result is that the plaintiff was entitled to the whole sum to the credit of the trust account, including accumulated interest, on the day that the account in plaintiff's name as beneficiary was closed by the act of the trustee. This court may affirm, reverse or modify a judgment brought here for review, " or grant to either party such judgment as such party may be entitled to." (Code, § 1337.) This means, of course, such judgment as a party may be entitled to upon the facts found, since we cannot review the facts or even look into the record to see whether they are supported by evidence or whether some other facts should be supplied.

In so far as the judgment in this case denied the right of the plaintiff to recover the whole fund as it existed in the trust account on the day that account was closed, it should be reversed, upon the plaintiff's appeal, with costs, and judgment ordered for the plaintiff for the whole amount of the deposit as it stood on the 7th of January, 1889, with interest.

All concur (GRAY and HAIGHT, JJ., on the merits, but they think that a new trial should be ordered).

Judgment accordingly.